IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Full Perspective Video Service, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 04 C 3038 |
| Carlos Garcia, Guadalupe Bejar, ) | |
| Internet Traffic Pros, Inc., and ) | |
| Diet Patch, Inc., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Full Perspective Video Services, Inc. ("FPV"), the judgment creditor of Original Diet Patch, Inc. ("ODP"), brings this three-count Complaint alleging Defendant Carlos Garcia caused fraudulent transfers to be made from ODP to Internet Traffic Pros, Inc. ("Traffic Pros"). FPV also alleges that Defendant Diet Patch, Inc. ("DPI") is a mere continuation and alter ego of ODP formed by Defendant Garcia and Defendant Guadalupe Bejar to defraud FPV. FPV thus requests the Court pierce the corporate veils of ODP, Traffic Pros, and DPI and to hold all Defendants liable for Plaintiff's judgment against ODP. Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendants' motion to dismiss.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). When determining a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers*, 398 F.3d at 933.

## BACKGROUND

The relevant facts alleged in FPV's Complaint, and regarded as true for the purposes of this motion, are as follows: Defendant Garcia wholly owns and controls ODP, a Nevada corporation, and is its sole shareholder. (R. 20-1, Second Am. Compl. ¶ 18.) ODP has no physical office or employees. (*Id.* ¶ 28.) ODP purchased diet patches from manufacturers and then contracted with outside organizations to perform all other business operations, including call management, printing of boxes and inserts, product fulfillment, and lead generation. (*Id.*) ODP entered into an agreement with FPV to provide product fulfillment services. (*Id.*) Defendant Traffic Pros, another Nevada corporation wholly owned and controlled by Defendant Garcia, provided the lead generation services. (*Id.* ¶¶ 19, 28.)

As the owner of both ODP and Traffic Pros, Defendant Garcia determined the amount Traffic Pros would charge ODP for the lead generation services. (*Id.* ¶ 23.) The agreement between ODP and Traffic Pros called for ODP to pay Traffic Pros $15 per lead regardless of the dollar amount of the corresponding sale or whether the lead generated a request for a free

sample. (*Id.* ¶ 24.) This arrangement provided Traffic Pros with a steady flow of revenue and left ODP responsible for all other operational costs. (*Id.* ¶¶ 25, 26.)

On or about September 18, 2003, FPV entered into a Services Agreement ("Services Agreement") with ODP. (*Id.* ¶ 9). Pursuant to the Services Agreement, FPV maintained an inventory of diet patches and packaging materials and shipped diet patches to customers on ODP's behalf. (*Id.* ¶ 29.) FPV regularly sent invoices to ODP for the amounts due under the agreement. (*Id.*) ODP subsequently failed to pay the invoices and on or about February 3, 2004, ODP ceased using FPV's services. (*Id.* ¶¶ 14, 15.) FPV filed an action against ODP in the United States District Court for the Southern District of Indiana and on April 9, 2004 obtained a judgment against ODP in the amount of $486,637.99. (*Id.* ¶ 16.) FPV has registered that judgment with this Court. (*Id.*)

FPV alleges that ODP is a shell company used by Defendant Garcia solely to shield Defendant Garcia and his other companies from liability. (*Id.* ¶ 19.) In support of this allegation, FPV asserts that ODP was grossly under-funded from the outset. (*Id*. ¶ 22.) FPV further alleges that the corporate separateness of ODP was continually ignored. (*Id.* ¶ 30.) As an example, FPV asserts that an employee of Defendant Traffic Pros signed agreements or attachments to agreements on behalf of Traffic Pros and ODP. (*Id.*) The employee also allegedly signed attachments for DPI, a corporation owned and controlled by Garcia's wife, Defendant Bejar. (*Id.*) Further, this same Traffic Pros employee signed checks on behalf of all three corporations. (*Id*. ¶ 31.)

FPV alleges that ODP transferred its revenue to Traffic Pros in order to defraud FPV. (*Id.* ¶ 41.) During the period between December 12, 2003 and February 16, 2004, while FPV's invoices to ODP were outstanding and unpaid, Defendant Garcia had ODP transfer $614,000 to

3

Traffic Pros. (*Id.* ¶ 33.) After the last of these alleged transfers, ODP's general ledger had a balance of less than $9,000. (*Id.*) FPV alleges the Garcia decided to close down ODP and issued a series of checks from ODP to himself and his wife, Defendant Bejar. (*Id.* ¶ 34.) ODP issued $15,000 in checks to Defendant Bejar despite the fact that she was not an ODP employee. (*Id.*)

FPV further alleges Defendants Garcia and Bejar formed DPI to defraud FPV and maintain the revenue stream ODP generated. (*Id.* ¶ 41.) Garcia allegedly parked the liabilities with ODP and transferred the diet patch business to DPI. (*Id*. ¶¶ 40, 41.) Garcia established a relationship with a new product fulfillment provider, Alpha Beta Press, and later shut down ODP leaving more than $500,000 in unpaid FPV invoices. (*Id*.) Defendants Garcia and Bejar then began to use DPI to maintain the continuity of the diet patch business. (*Id.* ¶ 37.) DPI began selling the identical product sold by ODP changing the name from "Original Diet Patch" to "Amazing Diet Patch." (*Id*.) Garcia and Bejar used the ODP website and its content in creating the DPI website and used the same product brochure, guarantee form, and package inserts as had been used by ODP. (*Id.* ¶¶ 38, 39.) Further, DPI used the same service providers as ODP, including Traffic Pros and Alpha Beta Press. (*Id.* ¶¶ 37, 39.) Following this shift of business to DPI, ODP's revenue consisted of only two modest sales. (*Id.* ¶ 42.)

In Count I of its Complaint, FPV alleges that the transfers from ODP to Traffic Pros violated the Uniform Fraudulent Transfer Act as enacted in Illinois, 740 ILCS § 160/1 *et seq.* ("the Act"), and seeks to recover these fraudulently transferred funds from Traffic Pros. (*Id.* ¶¶ 45, 47.) In Count II, FPV alleges that DPI is a mere continuation of ODP formed by Garcia and Bejar to defraud FPV and as such DPI should be liable for the debts and obligations of ODP, including FPV's judgment. (*Id*. ¶ 49.) In Count III, FPV alleges that ODP, DPI, and Traffic

4

Pros are mere instrumentalities or alter egos of either Garcia or Bejar and thus the corporate shields of each company should be pierced to hold Garcia and Bejar personally liable for the indebtedness ODP owes FPV. (*Id.* ¶¶ 51-53.)

## ANALYSIS

I.  **Full Faith and Credit Clause**

Defendants seek to dismiss the Complaint alleging that FPV is attempting to enforce a foreign judgment against parties not named in the foreign complaint in violation of the Full Faith and Credit Clause.[1] (R. 21-1, Defs.' Mot. to Dismiss Second Am. Compl. at 2.) In support of this allegation, Defendants rely upon *In re Estate of Wallen*, where the Illinois Appellate Court held that a plaintiff could not seek to pierce the corporate veil to collect a foreign judgment. 262 Ill. App. 3d 61, 70, 199 Ill. Dec. 359, 633 N.E.2d 1350 (2d Dist. 1994). Defendants further argue that the *Wallen* holding was reaffirmed by the Illinois Appellate Court in *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 529, 268 Ill. Dec. 305, 778 N.E.2d 291 (2d Dist. 2002).

Defendants' reliance upon *Wallen* and *Peetom* is misguided. The plaintiff in *Wallen* obtained a judgment against the lumber business of the decedent in Alabama and attempted to enforce the judgment in Illinois against the estate of the decedent who was the sole shareholder. 262 Ill. App. 3d at 63. The plaintiff argued that the decedent did not maintain separate corporate

---

[1] In their Reply Brief, Defendants also seek dismissal alleging that under the merger doctrine FPV's judgment against ODP serves as a bar to the instant claim. (R. 25-1, Defs.' Reply in Supp. of Mot. to Dismiss at 2.) Because Defendants raise this argument for the first time in their Reply Brief, they have waived this argument. *See United States v. Harris,* 394 F.3d 543, 559 (7th Cir. 2005). Had the issue been properly raised, however, the Court would likely note that a judgment against a corporation is a new and distinct obligation of the corporation which differs in nature and essence from the original claim. *Miner v. Fashion Enters, Inc.,* 342 Ill. App. 3d 405, 415, 276 Ill. Dec. 652, 794 N.E.2d 902 (1st Dist. 2003). As such, a judgment creditor may bring a separate action to enforce the judgment. *Id.*

5

and individual identities in running the lumber business. *Id.* The *Wallen* court held the full faith and credit doctrine prevented the court from enforcing the foreign judgment against the decedent's estate because the decedent was not a designated party in the original proceeding. *Id.* at 70. In so holding, the Illinois Appellate Court noted that the plaintiff could have sought relief against the decedent in the Alabama courts. *Id.* The court then considered, but ultimately rejected, the plaintiff's request to pierce the corporate veil because the plaintiff failed to provide sufficient evidentiary support showing that the decedent ignored the corporate identity. *Id.*

The case at bar is factually distinguishable from *Wallen* in two respects. First, Plaintiff could not have designated Defendants as parties in the original litigation because they are not subject to personal jurisdiction in the state of Indiana. (R. 24-1, Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 5.) Second, the *Wallen* court reviewed the sufficiency of the evidence, while this Court is considering only the legal sufficiency of the allegations in FPV's Complaint. Thus, the *Wallen* holding does not serve to bar FPV's claim.

Similarly, the *Peetom* decision does not bar a plaintiff from initiating an action to pierce the corporate veil to enforce a judgment against a corporation's shareholders. In fact, it provides direct support for FPV's claim to pierce the corporate veil. As the *Peetom* court explained:

> "[A] judgment creditor who has managed to secure a judgment against a corporation and seeks to hold the individual shareholders and directors of a judgment debtor corporation liable for that judgment may consider alternative remedies. First, a judgment creditor may choose to initiate a supplementary proceeding against the third-party shareholders and directors. Alternatively, a judgment creditor may choose to file a new action to pierce the corporate veil to hold individual shareholders and directors liable for the judgment of the corporation.

*Id.* at 528 (quoting *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 624, 196 Ill. Dec. 889, 630 N.E.2d 1054 (1st Dist. 1994)). The court also specifically stated, "our holding [in *Wallen*]

6

does not preclude a judgment creditor from filing an action to pierce the corporate veil to enforce a judgment against a corporation's shareholders." *Peetom,* 334 Ill. App. 3d at 529. The Court denies Defendants' motion to dismiss the Complaint based on this argument.

## II. Federal Rule of Civil Procedure 9(b)

Defendants next seek dismissal of Count I of the Complaint on the ground that FPV has failed to plead the fraudulent transfer allegations with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b). Defendants find support for their position in *Chicago College of Osteopathic Medicine v. George Fuller Co.* where the Seventh Circuit enumerated six essential elements of fraud under Illinois law that a plaintiff must affirmatively establish. 719 F.2d 1335, 1347 (7th Cir. 1983). Defendants' reliance upon *Chicago College*, however, is misplaced. First, *Chicago College* is factually distinguishable because the fraud claim there was predicated upon the material misrepresentations allegedly made by the defendant contractor and not upon the fraudulent transfers of funds as alleged here. *Id.* Second, *Chicago College* addressed only the essential elements of fraud necessary to survive a directed verdict at trial and did not address what a plaintiff must plead to survive a motion to dismiss. *Id.* Thus, *Chicago College* does not assist the Court in determining whether FPV's Complaint meets the heightened requirements for pleading fraudulent transfer under Rule 9(b).

Instead, the Seventh Circuit has held that a plaintiff must plead the circumstances constituting fraud with particularity pursuant to Rule 9(b) by including the "who, what, when, where and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Here, FPV has specifically alleged that Defendants Garcia, Bejar, and Traffic Pros participated in the fraudulent transfers. (Compl. ¶¶ 33, 34.) The pleadings detail the amount, the recipients, and the dates of the fraudulently transferred funds. (*Id.*) Further, FPV has pled that the corporate defendant's

7

principal place of business is Illinois and that the individual defendants are Illinois citizens. (*Id.* ¶¶ 2-6.) Finally, FPV has pled in detail how Defendant Garcia transferred ODP's cash to Traffic Pros, transferred ODP's ongoing revenue stream to DPI, and left ODP insolvent in order to defraud FPV. (*Id.* ¶¶ 33, 36, 37.) These allegations sufficiently detail the "who, what, when, where and how" of FPV's fraudulent transfer claim.

The Seventh Circuit's decision in *GE Capital Corp. v. Lease Resolution Corp.* lends further guidance on the pleading requirements for fraud under the Illinois Uniform Fraudulent Transfer Act ("the Act"). 128 F.3d 1074, 1079-80 (7th Cir. 1997). In *GE Capital*, the district court dismissed the plaintiff's fraudulent transfer claim for failure to plead fraud with sufficient specificity. *Id.* at 1079. On appeal, the Seventh Circuit concluded that the plaintiff's complaint was well within the pleading requirements of Rule 9(b). *Id.* Although the plaintiff in *GE Capital* asserted a constructive fraud claim under the Act and FPV's claim is for actual fraud, the court's findings are relevant to both causes of action under the Act. The *GE Capital* court held that a plaintiff asserting a fraudulent transfer claim must plead: 1) an allegation of jurisdiction; 2) a statement of the date and the conditions under which the defendant became indebted to the plaintiff; 3) a statement that the defendant owes the plaintiff the amount; 4) a description of the events surrounding the defendant's conveyance of property to the transfer recipient for the purpose of defrauding the plaintiff; and 5) the plaintiff's demand of the court. *Id.* at 1079-80.

FPV has pled these elements with sufficient particularity. The Complaint states the following: First, this Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1) as this civil action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000. (Compl. ¶ 7.) Second, on or about September 18, 2003, FPV and ODP entered into a Services Agreement. (*Id.* ¶ 9.) ODP owes FPV $477,471.99 for services rendered

8

by FPV to ODP pursuant to the Services Agreement and attorneys fees incurred by FPV. (*Id.* ¶ 12.) Third, FPV obtained a judgment against ODP in the United States District Court for the Southern District of Indiana on April 9, 2004 in the amount of $486,637.99. (*Id.* ¶ 16.) Fourth, during the period between December 12, 2003 and February 16, 2004 while FPV's invoices to ODP were outstanding, ODP transferred $614,000 to Traffic Pros. (*Id.* ¶ 33.) Fifth, FPV prays for judgment in its favor against Traffic Pros in the amount of $477,417.99. (*Id.* ¶ 9.) Thus, FPV's Complaint sufficiently details the circumstances surrounding ODP's alleged fraudulent transfer to Traffic Pros. The Court therefore denies Defendants' motion to dismiss Count I for failure to plead fraud with particularity.

## CONCLUSION

For these reasons, the Court denies Defendants' Motion to Dismiss the Second Amended Complaint.

Dated: July 18, 2005

                                    **ENTERED**

                                    *[signature]*
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**